Case number 2454-64 USA v. Jay Sadrinia, oral arguments not to exceed 15 minutes per side. Mr. Glassman, you may proceed for the appellant. May it please the Court, Ben Glassman on behalf of defendant appellant Jay Sadrinia. If it please the Court, I'd like to argue from counsel table. Certainly. Thank you so much, Your Honor, and I'd also like to reserve three minutes for rebuttal. Fine. There are a number of issues raised on appeal, but what I'd like to focus on this afternoon are making sure that we cover the so-called intrinsic evidence. I'd like to say a word about the insufficiency of the evidence, and then I'd like to talk about the Confrontation Clause if time permits. With respect to the so-called intrinsic evidence, as we've explained in our brief, this is evidence that was completely unrelated to the crimes charged, but it was highly prejudicial. And the government, to its credit, does not defend the district court's decision to say that the evidence of Ducker, Everidge, and Widener was intrinsic to the crimes charged. I don't think there's any evidence or any argument that it is. And so that is an error, a very consequential error by the district court, and the question is whether or not it's harmful. Now, harmful error under this Court's precedence, you look to a number of different things. You can look to what was the other evidence. If the other evidence was overwhelming, then perhaps it's harmless. You can also look to the prejudicial impact of the evidence that was admitted, even if there was overwhelming evidence. Could it have been admitted as 404B evidence, other acts? And I understand that the district judge refused to allow it to be admitted that way because the district judge said it was untimely. But assuming that we would review that issue for abuse of discretion, should those three pieces of key evidence qualify under 404B as other acts evidence? No, they should not. And let me address that question first on the merits, but then also circle back to some, I think, extremely relevant procedural points about the 404B alternative argument. So the test for 404B under the law of this circuit is we look to whether the evidence related to conduct that is substantially similar and reasonably near in time to the specific intent offense at issue. Let's look at the Ducker evidence. That's the intrinsic test, isn't it? No, that's 404B, Your Honor. Oh, I don't have it in front of me. I'm embarrassed. Yeah, that's Clay, United States v. Clay. That's not the rule you just read, is it? That's what this court looks to to determine whether or not evidence is admissible under Rule 404B to show intent or knowledge. Okay, thank you. Yes. And so these do not, would not qualify under this court's precedence because we're talking about a prescription that was written. I'm just focusing right now on Ducker and Everidge. A prescription that was written on an absent dentist prescription pad where an antibiotic was written on Cedrinia's own prescription pad 14 months earlier under completely unknown and different circumstances for a different patient at a different clinic where there was no, nobody even knows whether or not that prescription back in June 2019 was medically appropriate or not. But it shows, arguably, knowledge that what he, Cedrinia was doing, is not in compliance with normal prescriptions in the narcotics area, arguably. In that instance, Judge Moore, yes, it would show that, exactly. And that's part of the big problem. It would show that, arguably, with respect to that prescription in June 2019. Now, this prescription, the one that's at issue here in August of 2020, was written by Cedrinia on his own prescription pad. And so the only basis that would show that he was doing something or knew something was wrong with the June 2019 prescription was not similar to the crimes charged. And so the only way that one could draw the conclusion that he had knowledge for August of 2020 is by saying, well, in this other instance that's completely different from the crimes charged here, maybe he knew he was doing something wrong. And so it's more likely that he also was doing it here. Now, that is a propensity chain of reasoning. That is prohibited by the rules, and that's, of course, what's so difficult, even when you have. Well, yeah. I mean, that's a really interesting and thoughtful question, very thoughtful answer. So, I mean, you're saying that it's evidence of knowledge and intent in 2019, but then you're making a propensity linkage from 19 to 20, which is forbidden by the rule. But, I mean, doesn't 404B just, you know, kind of by its nature or by its scope, concern prior bad acts, you know, kind of similar bad acts? I mean, doesn't it by definition involve evidence that you could look at in one way and say that's propensity, but you could look at it in another way and say, I mean, particularly when he basically lies about what he wrote on that pad. He tells her, if I understand the testimony correctly, Dr. Everidge, he tells her that he wrote an antibiotic script when it turns out it was Percocet. And why can't the government say that's evidence that he knows sometimes that, maybe he got me, but he knows sometimes that he's writing illegitimate scripts. Okay, three answers. And the first answer is I think the question answers the question. All right. Well, we'll see what the government thinks, but go ahead. The second is that that's exactly why when I read this court's test that it lays out in cases like Clay and Bell and other cases, because when you do have prior bad acts that you're trying to show intent or knowledge, it is a slippery slope to differentiate between permissible knowledge inference and a propensity inference. And so that's why this court demands under the case law that the prior bad acts be sufficiently similar in time and nature that it's clear that you can draw the intent inference and not the propensity inference. And that leads to the third and very important point, which is this horse is so far out of the barn, because when you do that as a district judge, you have to give a limiting instruction that this evidence is permissible to be used only for intent. And that's because this court, because there is a danger of the propensity inference being drawn by the jury. This court, the district court here, did not, obviously, because it just thought it was intrinsic. Because it did it as, allowed it as intrinsic. So the question then is, is there not enough evidence to show knowledge and intent under Ruan, wholly apart from the, we will now say, hypothetically improperly admitted, three pieces of evidence involving the three women workers in the practice. And in particular, the experts saying that they would not prescribe morphine to a patient like Ms. Witt. Or to anybody, frankly, for a dental procedure. Well, Judge Moore, I actually think that the way that you phrased that question is relevant to the sufficiency. It is, definitely. But it also is relevant to the harmful error issue. Well, let me take them both. Let me take the harmful error issue first. Because there, it's not a question, obviously, they've got to be a different standard as to whether the evidence is sufficient is separate from if you have an error that contributes. Because that's the question, is does the, did the. Right, but if there is overwhelming evidence of the commission of a crime, then the fact that there was improper 404B evidence. That's right. Does not preclude upholding the conviction. That's exactly right, Judge Moore. And I would say for the reasons argued at length in the argument about insufficiency of the evidence of intent, that there was not overwhelming evidence in this case. And I would say even more that, to my colleague's credit, their brief doesn't even assert that there was overwhelming evidence. Never says the word overwhelming. They say there was ample evidence from which a jury could infer intent. That was true in U.S. v. Jenkins' 2015 case where we said it was 404B violation. I think the word ample might have been in that opinion. And as to sufficiency, but we ordered a new trial because, you know, it wasn't overwhelming. That's right. And that's exactly right. That's exactly right, Judge Kethledge. And if it's overwhelming, typically when, and this is not, you know, we don't have cases getting into this in the briefs, but typically to determine whether there's overwhelming evidence of intent, courts only find overwhelming evidence of intent when there's like an admission or there's like documentary evidence, that kind of thing. Isn't it troubling, at least, that the experts, including his own expert, said that they would never prescribe morphine to a patient? Am I mischaracterizing the evidence?  Yes. His own expert did not testify that she would never prescribe morphine. She testified that, in fact, she had not, but she testified that the prescriptions were appropriate, in her opinion. And the jury doesn't have to believe her, of course. If they were appropriate even though the pharmacy refused to fill the first one and said that only 18 pills of morphine were allowed and the second one then was for 30 pills? That's right. Well, the pharmacy, in refusing to fill it, I think the pharmacy was simply following the Kentucky regulations that by default you issue three days worth unless you have a medical judgment exceeding that. But I would say, Judge, if you look at Hinkle as their expert, the government's expert, if you look at his testimony for the August 26th prescription, the question that was asked to him is, is 30 milligrams of morphine tablets required when a patient is healing normally? And as we explained in the brief, you know, the answer is, well, without examining the patient, I would think not. And he didn't examine the patient. But if you look at even the question, the question of whether 30 milligrams of morphine is required, that's the language, if anything, of civil malpractice. That's not the language of whether anyone, any doctor would obviously know so that you could infer intent that that prescription was inappropriate. Can you just remind me real quick, what's the mens rea that the jury needed to find to convict in this case? They had to find that the prescription was unauthorized, meaning that it was without legitimate medical purpose and outside the course of medical practice, and that the defendant knew or intended that it was. That's the Ruan part. That's Ruan, exactly, which the district court thought, you know, I think that got the district court off on the wrong track about what was admissible. So moving to a hypothetical, what would be the way that the government could prove knowledge or intent other than by having experts say we would never do this, this is not something that any dentist would do to prescribe these two prescriptions of morphine in quick succession? That right there would have been the right evidence, Judge Moore, if they would have elicited that testimony from the expert, which they did not. Then that would be enough to show knowledge or intent? That would be circumstantial evidence from which knowledge or intent could be concluded because that way the jury could say, well, if we're crediting that testimony, then it's not merely that this prescription was inappropriate, but also any dentist would know that. And so even though you're not opining on this dentist's mental state, which an expert may not do, you could infer that it's so far from the standard of care that it's permissible to infer. It sounds almost like a recklessness standard, though. And Ruan is, you know, actual knowledge. Judge Kethledge, no argument from me on that. I mean, typically when this court has affirmed post-Ruan, it's because there's a lot more evidence. The other evidence that comes up in cases, Judge Moore, is the so-called red flag evidence where the patient, for example, comes in and is obviously addicted, obviously drug-seeking.  We don't have that here. No, we have the opposite of that because the judge didn't tell the truth. I mean, to build on Judge Moore's question a bit, I mean, the stringency that you're advocating today puts the government in a pretty tough spot in a Physician 841 case where, you know, it's not like somebody selling cocaine or heroin or just prima facie. Everybody knows it's illegal. Here you have a person who has a legal right to prescribe this thing, and you have to show per Ruan that he knows that there is no legitimate basis for writing this script. And, you know, I mean, experts can only do so much about the knowledge of this doctor, whether he personally knows. You know, and maybe he's just the worst doctor, but whether he personally knows. And evidence that he maybe did something similar 11 months before, that can't come in either. I mean, isn't that a bit stringent for the proof in these cases? Well, first of all, the Ruan makes the proof a little bit more stringent for an individual medical practitioner. That's the Supreme Court's decision. The second thing is that maybe he did something similar 11 months earlier. Well, if he actually did something similar 11 months earlier, and it was similar, then you wanted to have it admitted by a 404B with a relevant instruction. I don't know. I mean, how similar? It was Percocet, and at least as the record comes to us, apparently he lied about it when confronted. Right. So now we have morphine. Is it because it's a stronger drug that we would say it's not similar enough? I would say that at a very minimum, Judge, you'd have to have some evidence that the prior prescription was medically inappropriate, or that there was similar circumstances about the time that it was being prescribed post-surgery or something like that. One last question, and I realize we've gone over your time. We miss you. As I understand it, there were a number of other counts or charges that were added, and then there was a severance of those charges, and then after your client was convicted, then am I correct me when I'm wrong, the government then moved to dismiss with prejudice those counts? You are correct. Are they at all related to this? No, they are not. So what happened in this case is if the court looks at the procedural history, it's a little weird because there were prosecutors who brought the case up and then basically right before trial they switched out and a series of them switched out, and that's why we got this weird 404B intrinsic notice right before trial. But, yes, one of the things they did right before trial was to seek and obtain a superseding indictment for Counts 6 through 15. They were about completely different patients. I don't know anything about them, but they were different patients, and those were dismissed by the government with prejudice after trial, just as the court said. Thank you. Well, I'm sorry that I did not get to the confrontation clause, but if the court has any questions on that I'll take it up at any time. We'll rely on your briefs also. I kept preparing to say good morning, Your Honors, because I'm used to doing it in the morning, but I'll modify and say good afternoon, Your Honors, and may it please the Court. Michael Rotker from the Department of Justice on behalf of the United States. I understand that there was a lot of discussion this morning about the evidentiary issues and the admission of the evidence. I want to, I think if it's okay with the Court, what I want to do is start by talking about why the evidence was sufficient, and that will sort of tie into the evidentiary claims and why, in our view, the district court did not abuse its discretion, but that even if it did, any conceivable error in admitting that other act's evidence or that intrinsic, whatever you want to call it, the other evidence was harmless. You would agree sufficiency doesn't mean harmless, right? No, I understand that. I understand that. Well, okay. You may have a little flame over here you want to attend to at some point, so go ahead. No, no, no. I'm happy to address, is the flame being the evidentiary issue? Yes. I'm happy to address that, Your Honors. I don't want to derail it. I mean, if you want to put it in context. I just wanted to just point out that separate and apart from the three witnesses whose testimony is controverted, we also have this other evidence that's really not controverted about the timeline of what was prescribed. I don't want to. You go ahead. And that, all I'm saying is that that evidence really goes to the Ruan point, and the district court, I think, had a very informative statement, that Ruan giveth and Ruan taketh away. Well, if you don't mind, why don't you tell us that evidence. My point is just don't like go on and on and on. I'm not going to ignore it. The evidence was, you know, that, again, we're viewing it in the light most favorable to the jury's verdict. The first thing is that the government's expert testified that the accepted standard of medical care is a treatment of ibuprofen and Advil alternating regimens. At the preoperative appointment, however, Dr. Cedrinia prescribed Percocet. There was no reason to believe at that point that Cheyenne was going to need Percocet, but he prescribed it. On the day of the procedure, things don't go as expected, and he prescribes another round of Percocet at an even higher dose level, even though she still had the first prescription because she hadn't taken it. And then, of course, you get to the two morphine prescriptions that he prescribed. Now, what's important there is in the few days between the second Percocet and the morphine, she comes back complaining of pain. He didn't send her to the emergency room. He didn't say go to the hospital. But he wrote a prescription for a medication that the government's own expert testified is reserved for people in end-of-life palliative care. And not only that, he wrote two such prescriptions in a three-day period, even though he had only written one prescription for any other patient for morphine in the past. All of this is circumstantial data that the jury could rely on to have found that he knew that he was exceeding the limits, that he wasn't... How does it show that he knows he's exceeding the limits? Because it raises into the theory, which is that he was not acting in her best interest. If he was acting in her best interest, he wouldn't have written the morphine prescriptions. He wouldn't have prescribed Percocet before she had even had a procedure. That he was acting because he was concerned about his professional reputation. He was acting because his dental work was shoddy, and he was trying to cover that up and protect himself. So, no. Almost to the same point about the shoddy dental work, I mean, he gets convicted for the fourth prescription, the second morphine prescription. And, I mean, isn't it true that by that point she is in a great deal of pain, and this thing apparently was a very unsuccessful surgery? There's all kinds of complications. And so the question is whether at that time... I mean, I know you're saying, you know, the earlier stuff is circumstantial evidence of a general, you know, intent. But as to the last one, I mean, you know, there's a closer question, perhaps, about whether she needs a very strong medicine. Well, I don't... I mean, maybe that's a debatable point. But that's why we have the jury, right? The jury weighs it, and the jury decides whether there's enough there. The jury decides should he have sent her to the emergency room instead of giving her something that's reserved for pain management specialists for people in hospice care, as opposed to overprescribing a medication that the jury obviously thought exceeded the permissible limits of what... There may have been sufficient evidence for the jury to make that call about knowledge for the fourth prescription. I think one of the questions here is, you know, was there ample evidence, enough evidence, ample evidence, overwhelming evidence of knowledge such that if we are to agree with Mr. Glassman that there were evidentiary errors here that they would be harmless? Yes, and I think they would be. I don't think they would... Because everything else is so overwhelming? Like, what's your theory of harmlessness? Well, it's harmlessness as to an evidentiary error is not a constitutional error. It's a non-constitutional error. So the test is would it substantially persuade the jury's verdict. And whether or not we use the word overwhelming or ample or whatever the word is, I think the point is that there's significant independent evidence. And I want to point out to the court as well, I know that it wasn't this panel, but when Mr. Dr. Cedrini previously sought bail pending, release pending appeal, and when this court, a different panel of this court, denied his application, the panel who denied it specifically said that assuming without deciding that Cedrini has shown the district court abused its discretion in admitting the challenged evidence, he has not shown that it is likely that the admission was harmful. And then the court went on to note that the government had identified significant independent evidence. So that's why we didn't use the word overwhelming because that's typically reserved in a constitutional error case, but this is a non-constitutional error. And I think the takeaway that I would like the court to have is that there are sort of two buckets of evidence. There's what I was just referring to, the timeline and what was prescribed, and then we have these secondary, you know, anecdotal testimony. I think even if you stripped out that anecdotal evidence, you would still have sufficient evidence and any conceivable error. I mean, sometimes anecdotal and, you know, prior bad acts, you know, it's not as germane to us as lawyers, but it's pretty spicy, exclamatory stuff. I mean, like. Let's hear it. You know. Just a horrible, you know, foul language. Oh, sure. The Widener stuff, that just seems like just patently character evidence. The F-bomb text, I mean, what does that have to do with anything here? I don't, there's no specific. I'm not going to tell the court that that was offered to prove knowledge. But to my point, then in closing, the prosecutor says, you know, he's arrogant. He thinks that she's white trash. I mean, I mean, I'm not, I'm not talking about the prosecutorial misconduct. No, no, I understand. I'm standing alone. But, yeah, but I mean, this stuff, you know, it punches above its weight in the jury's consideration sometimes. Well, I think there's also more to it, Your Honors. I actually went back and reread the closing argument this morning, and one of the things the prosecutor said at the very end, she said to the jury, I want to remind you, Dr. Cedrini is not on trial for being a bad person. He is not on trial for being a bad dentist. Why put this in, then? I mean, this is just purely, you know, kind of poisoning the well to some extent. I can't speak to why those specific statements, and I agree with the court that they're tangential, but that doesn't make them harmful. Okay? That doesn't require a reversal on this context. Now, also, I'm sorry, go on. Let's tee up the 404-B. Sure. Please. So you're not defending the district court's determination that this is supposedly intrinsic evidence to the court? No, because I think the court has cautioned against it. And so, and then, I mean, that would seem kind of right at the get-go, to kind of hamstring a harmlessness argument, because we do not even have a limiting instruction pursuant to 404-B. Right. So let me address that. Okay. Please. Please. First of all, one of the, I'm glad you brought that up, one of the points is there was no request for a limiting instruction. Yeah, but it's not being admitted under 404-B. No, I understand. But he could still ask for a limiting instruction that you're hearing this evidence, even if it's not 404-B, you can still review it. Do you have any authority for the proposition that a criminal defendant has an obligation to request a 404-B instruction as to evidence that isn't supposedly admitted under 404-B? No, not specifically, but that's the point. You can always request a limiting instruction, even if it's offered, even if you accept the district court's theory that this is intrinsic evidence. But, I mean, are you arguing that they waived? No. Okay. I mean, because, look, the court is just doing this under a different auspice. Let me clarify. I'm not saying that he waived it, but I'm saying if we're going to fault the lack of a limiting instruction, it bears noting that none was requested, and you can always request a limiting instruction. Okay. But we're looking at this record to determine whether the wrongful admission of this as intrinsic evidence swayed the jury potentially. Right. It would seem like the absence of an instruction that you should only consider this evidence for some non-prejudicial purpose would be germane to that analysis, and the fact that they didn't ask for it would seem to be excused by the fact that it wasn't admitted under 404-B. Right. I guess, Your Honor, I appreciate the concern. I guess what I'm saying is just because evidence that's admitted for reasons other than 404-B doesn't mean you can't ask for a limiting instruction. But it was wrongfully admitted under a different ground. Well, it was admitted on a different ground that we're not defending. I'm not saying it's wrong, and I don't want to be understood as conceding. I think it's clearer to view this because if you look at the record, you will see at the pretrial hearing where the district court was addressing the evidentiary issues, the court specifically said, and everybody understood, this evidence was being offered to prove knowledge. Now, we get into the issue about the reasonableness of the notice, but everybody understood that this wasn't being offered gratuitously, that under Ruan, we have, you know, we need a little bit more latitude to be able to prove knowledge, and that's why it was offered. So the defense could have certainly said at trial, we want an instruction that this is the jurisdiction. I guess I'm just telling you myself. I'm not at all persuasive. I don't think it matters that they didn't ask. Okay. I mean, I'm just being candid. No, I appreciate that, Your Honor. And on the reasonableness thing about, you know, I mean, so the district court said it wasn't a reasonable advance notice.  It's 12 days before trial. Right. The government makes no record as to why it was reasonable, unless I'm mistaken, the government doesn't even argue, you know, in opposition to the court's finding. Well. So the idea that we're going to, I mean, second guess that very, that's like totally in the district court's wheelhouse to make that call that we're too close to trial. So, I mean, what do we, I don't see how we revisit it in the way you're asking us to, the reasonableness thing. Well, one thing, we didn't make a record because ultimately the district court admitted the evidence. It's not a rationale that we're defending, but the district court did admit the evidence. The other point. Yeah, I know. But if it's going in for the wrong reason, you might want to point it. Well, it was going in for the right reason, the wrong rationale. The reason was to prove knowledge. Everybody understood that, whether it's 404B or intrinsic. But the rationale may have been incorrect. So, I would, let's just take it as a given that the court believes that this, again, it is an abuse of discretion. The prosecution maybe has. I'm sorry? If everybody knew it was for knowledge and coming in for knowledge, I mean, kind of based on your own logic, I mean, the prosecution could have asked for a limiting instructive. Well, I don't think we could have, but I don't think that's typically the way it works. I mean, if you're worried that it will be come in for things that it's not and the jury would rely on it for things that you're not. I mean, just as much as you're asking, you know, saying the defense should object when it's not, you know, admitted on these grounds. I'm not aware of situations where the government typically asks for limiting instructions. I don't think that we're trying to gain the system. I don't think we're trying to gain some sort of unfair advantage. But it's typically, if the defendant is concerned that it's coming in for an improper purpose, it's incumbent on the defendant. But let's just assume. Who came up with the idea of calling it intrinsic evidence? The government's motion in limine before trial sought to admit the testimony from these three witnesses, and it was siled as a motion to admit as either intrinsic or 404B. The district court then said, I'm not going to – it's coming in for knowledge, but I'm not treating it as 404B because of this notice problem. So who came up with it? It was the government's theory, yes. But, again, even if you assume, and I'm sensing from the court's questions, perhaps the court is going to find that there was an abuse of discretion, that doesn't end the inquiry because you still have to determine whether or not it was harmful error. And as I said before, Your Honor, in response to your question, the test for nonconstitutional harmless errors substantially sways the verdict. And here, I think given all the independent evidence that existed about what was prescribed, what he knew, his deviation from the accepted standard of care, I understand it's not the same as sufficiency. I'm not trying to conflate the two, but I do think there's an overlap. And I think here, even if you didn't have the three witnesses testify, if you just relied on the timeline, the government's expert, by the way, testified that this wasn't even a close case. There was no gray area here. That was his opinion. Because the court in denying what the rule, is it Rule 29? Uh-huh. The district court in denying the Rule 29 motion specifically cites Dr. Everidge's testimony. Yes. Well, it's entitled to, because even if the evidence was wrongly admitted. It just goes, it had a certain salience and significance in the district court's mind, apparently. It did, but for purposes of a sufficiency review, what I'm talking about, again, I'm trying to keep the two separate. You're not on sufficiency. You're on evidence. I'm a dog with a bone on the floor. Yeah, well, because. As far as, you know. Well, the district court believed the evidence was properly admitted, so of course it's going to rely on it. And I do think it was entirely appropriate to consider that evidence. The fact that it happened a year before doesn't, that goes to the weight of the evidence, not its probative value. It's prior bad acts. It's not contemporaneous bad acts. It's prior bad acts. And again, there has to be, I think, some, respectfully, there has to be some latitude. Now that the Supreme Court has elevated the government's burden, we do have to be able to rely on those types of events to provide texture and context. And if you look at Huddleston, the Seminole 404B case, the Supreme Court specifically said that the government is entitled to significant latitude in presenting prior bad acts when it goes to something like knowledge or intent, which is circumstantial, because that's really the only way you're going to be able to prove it. And again, I would, you know, I don't want to overplay my hand here, and I just, I wanted to also clarify on the order denying release pending appeal, we're not suggesting that's law of the case. The panel who decided it specifically said that it's not conclusive, but I do think the reasoning that they used is certainly persuasive in deciding why any conceivable error in admitting this evidence would not justify a new trial. I'm running out of time. I know there were other issues. I don't know if the Court has any further questions while I'm at the podium. If not, I will give back my last ten seconds. Thank you. I appreciate your arguments. Thank you, sir. I wish I could have given you back more time, but take what you can get. Regarding the harmfulness, Your Honor, Judge Kethledge correctly noted that the district court, in denying the Rule 29, relies on this prescription pad incident. But more than that, in discussing sufficiency of the evidence on appeal, the government relies on it. And in its brief, it's section 1C, 1B, relies on the same thing. So even on appeal, it has that weight. But I also want to direct the Court to the prosecutor's closing argument. Now, Judge Kethledge mentioned the completely extraneous Widener use at closing argument, which is in our reply brief, but I also want to mention about the reference in closing argument to Ducker, who was the former office manager who claimed that she quit and that Cedrinia was going to kill someone. This was a case that was before the jury where the patient died in this case. It's a death-resulting case. This was what the prosecutor said about Ducker on page 2260 of Record 150. She said only three pages into the closing argument to the jury, she said, when he prescribed a Cheyenne wit, he prescribed, even though back in 2019, on the day she quit, Donna Ducker, his employee who testified, warned him he was going to kill someone if only he had listened. That's how the prosecutor began her closing argument, using this evidence, which was extremely impactful, probably the most dramatic and impactful evidence that was presented at trial. You are right. I believe the Court asked the question about when we're talking about the prescription on August 26 where she had come back complaining of pain. In the meantime, I know I can't retry the case here, but if you look at the defense Exhibit 6, that was where the boyfriend texted the doctor to say she was in excruciating pain before he prescribed the morphine, and he said, yeah, just you can go three and a half hours with the Percocet and then add ibuprofen. That was the evidence. And then the argument from my colleague that Cedrinia was, quote, not acting in her best interest. That's not an argument for criminal intent. Again, that's an argument about whether or not we think that was good medicine, whether the doctor was doing the right thing medically. That's not an argument about whether or not there was knowingly intending to issue a prescription that was unauthorized. For all of those reasons, this Court should reverse this judgment, either with an order of acquittal or at least for an order for a new trial. Thank you both. The case will be submitted, and the clerk may adjourn court.